**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **LOCUS LOCATION SYSTEMS, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | **Civil Action No.** |
| **V.** | § | |
| | § | **Jury Trial Demanded** |
| **PCTEL, INC.,** | § | |
| | § | |
| **DEFENDANT.** | § | |
| | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

1. This is an action under the patent laws of the United States, 35 U.S.C. §§ 271 *et seq.*, to protect Locus Location Systems, LLC's ("Locus") innovations in over-the-air radio performance analysis embodied in U.S. Patent No. 8,565,096 (the "'096 Patent") against PCTEL, Inc. ("PCTEL") based on PCTEL's unauthorized making, use, sale, offer for sale, and/or importation into the United States of automated spectrum monitoring and uplink testing products and systems marketed under the SeeHawk® *Monitor* name. Locus states as follows:

## PARTIES

2. Plaintiff Locus is a limited liability company organized under the laws of the State of Florida, with a principal place of business in Melbourne, Florida, and is the assignee and owner of all right, title, and interest in the patent asserted in this action.

3. Upon information and belief, PCTEL, Inc. is a corporation organized under the laws of the State of Delaware and headquartered at 471 Brighton Drive, Bloomingdale, IL 60108. PCTEL conducts business nationwide, including within Delaware, and has made, used, sold, offered to sell, and/or imported into the United States accused monitoring and analysis systems that practice the inventions claimed in the '096 Patent when used as instructed and intended, thereby causing damage to Locus and entitling it to monetary and equitable relief.

1

4.    Upon information and belief, Defendant may be served with summons and Complaint by serving same on its Registered Agent: The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

## JURISDICTION AND VENUE

5.    This Court has exclusive subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the patent laws of the United States, including 35 U.S.C. § 271.

6.    This Court has general personal jurisdiction over PCTEL because, on information and belief, PCTEL resides in this District by virtue of its incorporation in the State of Delaware.

7.    This Court has specific personal jurisdiction over PCTEL because, on information and belief, PCTEL regularly conducts and has conducted business in the State of Delaware, including in this District, and purposefully avails itself of the privileges of conducting business in the State of Delaware and this District. On information and belief, PCTEL has, directly and/or through agents and/or intermediaries, purposefully directed infringing activities into this District, has committed acts of infringement in this District, and derives substantial revenue from goods used or consumed in this District.

8.    PCTEL's actions that have given rise to this action have established minimum contacts with Delaware such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

9.    Venue is proper in this District under 28 U.S.C. § 1400(b) because, on information and belief, PCTEL resides in this District by virtue of its incorporation in the State of Delaware and/or it has a regular and established place of business in this District and has committed acts of infringement here.

**LOCUS AND THE ASSERTED PATENT**

10. Locus is a Woman Owned Small Business (WOSB) and a Hispanic American Small Business (HASB).

11. Locus delivers real-time, mission-critical radio diagnostics and radio frequency ("RF") analysis for public safety and military agencies through its patented DiagnostX platform, which it describes as the only over-the-air system that measures two-way radio alignment and performance in real time without interrupting service.

12. The patented technology embodied in the DiagnostX platform keeps radios mission-ready and reliable in the most demanding conditions by identifying issues before they become failures, allowing agencies to boost operational readiness and protect personnel when response time is essential.

13. Consistent with its stated mission—"Empowering system managers to effortlessly monitor, analyze, and optimize their two-way radios across diverse networks of users, agencies, and departments without ever having to physically touch a radio"—Locus's DiagnostX provides autonomous, over-the-air radio health monitoring that identifies radios in need of maintenance before a communication failure occurs, assures operational readiness and personnel safety, decreases radio maintenance technician time, reduces routine maintenance, mitigates potential liability risk, operates completely independent of the radio system, and serves as an ideal complement to an auto-tune service monitor.

14. Locus is a recognized innovator in over-the-air radio diagnostics, having pioneered non-intrusive, real-time methods to evaluate two-way radio health and performance during normal operation, and it protects these innovations through a robust patent portfolio comprising fifteen issued United States patents: U.S. Patent Nos. 8,565,096; 8,600,371; 8,825,042; 8,948,022;

3

9,282,482; 9,432,866; 9,681,321; 9,743,302; 9,961,578; 10,200,902; 10,244,417; 10,609,585; 10,659,982; 11,153,772; and 11,206,562, which collectively cover core techniques for capturing live RF transmissions, measuring operating characteristics, correlating results to specific devices through embedded identifiers, determining device health during normal over-the-air operation, and presenting actionable diagnostics through graphical interfaces and tabular reports.  This extensive portfolio reflects more than 15 years of sustained research and development and demonstrates that Locus has consistently been at the forefront of innovation in this specialized field, building layer upon layer of patented technology that underpins its DiagnostX platform and secures its position as the industry leader in autonomous, non-disruptive radio performance analysis for public safety, military, and critical communications customers.

**U.S. Patent No. 8,565,096**

15.     Locus is the assignee and owns the entire right, title, and interest in and to U.S. Patent No. 8,565,096 B2, titled "Method and System for Analyzing Radio Performance During Over-the-Air Operation."  The '096 Patent issued on October 22, 2013 to named inventors Danny Caudill, Michael Keefe, Charna Parkey, Robert Mitchell, and Murad Qahwash.  The '096 Patent issued from U.S. Patent Application No. 12/882,193, filed on September 14, 2010, and claims priority to U.S. Provisional Application No. 61/252,693.  A true and correct copy of the '096 Patent is attached as Exhibit A.

16.     As assignee and owner of the entire right, title, and interest to the '096 Patent, which is established on the face of the patent, Locus has the right to sue and recover for past and ongoing infringement of the '096 Patent.

17.      The '096 Patent discusses various problems with prior art systems.  For example, the '096 Patent's specification discusses how prior art systems were unable to determine that a

"device is not operating according to its specification until it fails completely." This substantial failure in the then-existing technology meant that, during an emergency, as one example, the transmitting device could fail without prior warning.

18. The '096 Patent overcame the limitations of the prior art. The '096 Patent claims systems and methods that employ one or more RF sensors and an analyzer to capture and measure live over-the-air transmitted signals, determine operating characteristics and "health" against device specifications and regulatory limits, correlate measurements to device identifiers embedded in the transmissions, and display results via a user interface, all during normal operation and without removing devices from service, as described in the specification.

19. Thus, as the '096 Patent explains, the "health" of the transmitting device can be determined prior to failure, providing a user advance notice that certain parameters are not met, all while the transmitting device continues to operate. A user can then anticipate and take precautionary measures, such as correcting the issue, before the transmitting device fails completely.

### Locus's Commercial Embodiments of the Asserted Patents

20. Locus has commercialized its DiagnostX product line to the benefit of critical communications customers who require non-disruptive, field-deployable diagnostics. Generally, radios drift away from the required frequency, according to that radio's specifications. Prior to the '096 Patent, and its embodiment in the DiagnostX system, each radio, including those in a networked system, had to be physically connected to an analyzer by a technician. This manual process was expensive and, for a majority of radios, unnecessary because the radio was operating within the specification's parameters.

5

21.     Locus's innovations embodied in the '096 Patent address the long-standing industry problem of diagnosing transmitter performance without disrupting service.   The patented technology enables continuous, over-the-air, real-time analysis of operational characteristics that can preempt failures, improve network capacity, and ensure regulatory compliance.  These are the core benefits realized by Locus's DiagnostX system and related offerings.

22.     The patent specification explains that the invention, embodied in the DiagnostX system, captures control and working channel waveforms in trunked networks and conventional networks, measures signal parameters such as Received Signal Strength Indicator (sometimes called Received Signal Strength Indication) ("RSSI") against a threshold for meaningful analysis, and flags incipient problems by comparing those measurements to tight tolerances set by the operator.  Locus developed and commercialized this non-intrusive diagnostics approach years before the accused conduct by PCTEL.

23.     Locus's patent-backed technology DiagnostX receives over-the-air signals during normal device operation, measures parameters such as frequency, amplitude characteristics, and RSSI for quality assurance, correlates those measurements to specific devices through identifiers in the transmissions, and visualizes them through a graphical interface.  These core capabilities, *i.e.*, real-time over-the-air signal capture, parameter measurement (including frequency, amplitude, and RSSI), device-specific correlation via embedded identifiers, and graphical presentation of actionable diagnostics lie at the heart of the innovations protected by the '096 Patent and Locus's broader patent portfolio.

24.     In this way, DiagnostX furnishes network operators with actionable diagnostics at scale.

## PCTEL'S ACCUSED CONDUCT

### The International Code Counsel Amends the International Fire Code

25.     In 2018, the International Code Counsel ("ICC") amended the International Fire Code ("IFC"). Relevant to this case, Section 510 of the IFC was amended, which governs in-building emergency responder radio coverage.

26.     The Section 510 amendments required a number of signal thresholds be met. For example, Section 510's amendments required at least 95% of each floor of a building meet specific signal criteria, such as 95 decibel-milliwatts ("dBm") for general areas and 100 dBm for critical areas. Section 510's amendments also introduced specific testing procedures, requiring each floor be divided into a "grid" and each cell of the grid be individually tested for compliance.

27.     As part of Section 510's amendments, both downlink signal (outbound) and uplink signal (inbound) measurements were required to ensure compliance.

### PCTEL Meets with Locus

28.     Upon information and belief, in 2018, PCTEL did not have existing technology that could monitor or measure uplink signals to test compliance with the amended Section 510's requirements.

29.     On March 30, 2018, representatives for PCTEL met with representatives for Locus to discuss Locus's technology (the "Meeting").

30.     PCTEL's Director of Market Development, Mr. David Adams, attended the Meeting.

31.     Locus's Managing Partner, Mr. Joseph Rey, and Manager of Engineering, Mr. John McCarthy, attended the Meeting. The Meeting focused on PCTEL's inability to perform testing

that complied with amended Section 510's requirements and how Locus's technology could help PCTEL overcome those deficiencies.

32.     During the Meeting, Mr. Rey and Mr. McCarthy informed PCTEL that Locus had patented technology which may benefit PCTEL, including one or more of the '096 Patent and its related patents. Mr. Rey and Mr. McCarthy discussed the DiagnostX system, its design and functionality, and its ability to capture transmissions of the Inbound Control Channel (the uplink signal).

33.     However, PCTEL objected to the size and immobility of Locus's then-available DiagnostX system.

### PCTEL Infringes the '096 Patent

34.     Upon information and belief, after the Meeting, PCTEL designed and developed a system which copied Locus's patented technology.

35.     Upon information and belief, PCTEL makes, uses, sells, offers to sell, and/or imports automated spectrum monitoring and uplink testing products and systems marketed as SeeHawk® *Monitor*, which, when operated as intended and instructed, practice one or more claims of the '096 Patent by receiving live over-the-air transmissions from RF devices, measuring signal parameters indicative of device performance, using device-identifying information to correlate measurements to particular transmitters, and displaying the resulting operating characteristics through a user interface.

36.     Upon information and belief, the SeeHawk® *Monitor* infringes one or more claims of the '096 Patent when in operation, including Remote Test Units (RTUs), Platform Manager, and SeeHawk Central, as described in PCTEL's own product brochure and materials.

37. Upon information and belief, PCTEL's RTUs installed at radio sites receive and monitor spectrum and radios, thereby receiving over-the-air RF signals at signal sensors, and the system reports key radio metrics, measures RF power, and performs spectrum analysis and protocol-specific measurements, thereby measuring signal parameters and determining device operating characteristics for public safety and other critical communications networks.

38. Upon information and belief, PCTEL's Radio Metrics functions allow sorting and filtering by radio ID, evidencing use of identifiers from received signals to correlate results to particular transmitting devices, and the Platform Manager and SeeHawk Central software display and report those results via a graphical user interface.

39. Upon information and belief, PCTEL and its customers configure Platform Manager to schedule uplink testing and interference monitoring at selectable cadences for specific radios or sites, thereby collecting operating characteristics more frequently for identified transmitting devices than for other transmitting devices.

40. PCTEL's brochure expressly describes remote configuration and scheduling of testing and monitoring, which supports the pleaded inference as to targeted collection frequency for identified devices and will be further substantiated in discovery.

41. Locus has been damaged by PCTEL's infringement and will continue to suffer irreparable harm absent injunctive relief, and monetary compensation alone will be inadequate given the competitive harm to a patent-backed innovator.

42. On information and belief, PCTEL has directly and indirectly infringed, and continues to directly and indirectly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '096 Patent.

43. Claim 1 recites:

9

> An apparatus for determining operating characteristics of radio-frequency (RF) transmitting devices while the devices are in normal operation transmitting over-the-air RF signals each including an identifier of the transmitting device, the apparatus comprising:
>
> at least one RF signal sensor receiving the RF signals, the at least one sensor responsive to the RF signals received;
>
> an analyzer measuring signal parameters of received RF signals and determining operating characteristics of the transmitting devices from the signal parameters, the analyzer:
>
> using the identifier from the received RF signals to correlate operating characteristics to the particular one of the transmitting devices; and
>
> collecting operating characteristics for identified transmitting devices more frequently than operating characteristics for other transmitting devices; and
>
> a graphical user interface displaying the operating characteristics for each transmitting device.

44.     On information and belief, PCTEL's SeeHawk® *Monitor* is an apparatus for determining operating characteristics of radio-frequency (RF) transmitting devices while the devices are in normal operation transmitting over-the-air RF signals each including an identifier of the transmitting device.

45.     PCTEL's brochures describes the SeeHawk® *Monitor* as "a single, automated system for ensuring reliable critical communications across public safety, private, and commercial networks. It monitors spectrum for noise and interference, reports key radio metrics such as frequency offset, [and] automates in-building and outdoor uplink coverage testing." The apparatus describes "Sort and filter data by radio ID." Below are excerpts from PCTEL's brochure:



**FIG. 1**

# One System – Multiple Applications

SeeHawk® *Monitor* is a single, automated system for ensuring reliable critical communications across public safety, private, and commercial networks. It monitors spectrum for noise and interference, reports key radio metrics such as frequency offset, automates in-building and outdoor uplink coverage testing, and simplifies commissioning of code-compliant in-building systems. In the field, SeeHawk *Monitor* can also supplement interference location estimation, monitor downlink 4G/5G performance and detect rogue cellular base stations.

**FIG. 2**



**FIG. 3**

46.    "[M]onitor[ing] spectrum for noise and interference, [and] report[ing] key radio metrics such as frequency offset" is an example of "determining operating characteristics … while the devices are in normal operation transmitting over-the-air RF signals."  Upon information and belief, the SeeHawk® *Monitor* determines other operating characteristics of RF transmitting devices, in addition to the frequency offset.  By "[s]ort[ing] and filter[ing] data by radio ID," each transmitting device includes an identifier of the transmitting device.

47.    On information and belief, the SeeHawk® *Monitor* apparatus comprises at least one RF signal sensor receiving the RF signals, the at least one sensor responsive to the RF signals received.

48.    The SeeHawk® *Monitor* utilizes Remote Test Units (RTUs) which "monitors spectrum and radios, and sends data to Platform Manager:"



**FIG. 4**

49.     The RTU comprises "at least one RF signal sensor receiving the RF signals" which allows the RTU to "monitor[] spectrum and radios."  When the RTU "sends data to Platform Manager," the "at least one sensor [is] responsive to the RF signals received."

50.     On information and belief, the SeeHawk® *Monitor* apparatus comprises an analyzer measuring signal parameters of received RF signals and determining operating characteristics of the transmitting devices from the signal parameters.

51.     The SeeHawk® *Monitor* measures "Radio Metrics" and can "Sort and filter data by radio ID."

13



**FIG. 5**

52.    The SeeHawk® *Monitor* comprises an "analyzer measuring signal parameters of received RF signals" at the RTU, which can be "[s]ort[ed] and filter[ed] … by radio ID."  The analyzer "determine[es] operating characteristics," including at least the "frequency offset," of the transmitting device from the signal parameters of each transmitting device received at the RTU.

53.    On information and belief, the analyzer uses the identifier from the received RF signals to correlate operating characteristics to the particular one of the transmitting devices.

54.    The SeeHawk® *Monitor's* Platform Manager software "reports test results, radio metrics, downlink performance, and interference problems."



Internet Connection

Platform Manager software remotely configures RTUs, schedules uplink testing and interference monitoring, and reports test results, radio metrics, downlink performance, and interference problems.

**FIG. 6**

55.     The SeeHawk® *Monitor* can "Sort and filter data by radio ID" by using the "identifier from the received RF signals" at the RTU.  The SeeHawk® *Monitor*, using the analyzer, can "correlate operating characteristics to the particular one of the transmitting devices" when it "reports test results, radio metrics, downlink performance, and interference problems" to the Platform Manager, which is "filter[ed] data by radio ID."

56.     On information and belief, the analyzer collects operating characteristics for identified transmitting devices more frequently than operating characteristics for other transmitting devices.

57.     The Platform Manager can "remotely configure RTUs, [and] schedules uplink testing and interference monitoring."  Upon information and belief, the Platform Manager can be configured to conduct testing and/or monitoring as selectable cadences for specific radios or RTUs, thereby "collect[ing] operating characteristics for identified transmitting devices more frequently than operating characteristics for other transmitting devices."

15

58.     On information and belief, the apparatus comprises a graphical user interface displaying the operating characteristics for each transmitting device.

59.     On information and belief, the graphical user interface of the SeeHawk® *Monitor* can display various reports or maps to indicate operating characteristics of each transmitting device, including Received Signal Strength Indicator ("RSSI"), Signal-to-Noise ("SNR"), radio metrics, or other reports and/or graphical depictions of operational parameters, as shown below.



**FIG. 7**



**FIG. 8**

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,565,096 (35 U.S.C. § 271)

60.     Locus repeats, realleges, and incorporates by reference the preceding paragraphs as though fully set forth herein.

61.     PCTEL does not have, and has never had, a license from Locus to the '096 Patent to make, use, sell, offer to sell, and/or import devices which practice the systems and methods of the '096 Patent.

62.     On information and belief, PCTEL has directly infringed and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '096 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell within the United States, and/or importing into the United States, the accused SeeHawk® *Monitor* products and systems (the "Accused Device"), which practice the systems and methods of one or more claims of the '096 Patent, and by using and testing such systems in the United States, including in this District, all without license or authorization from Locus.

63.     In addition, or in the alternative, on information and belief, PCTEL has induced and continues to induce infringement of one or more claims of the '096 Patent in violation of 35 U.S.C. § 271(b) by actively and knowingly encouraging, instructing, and aiding customers and users to employ the Accused Device in ways that directly infringe one or more claims of the '096 Patent, including through user manuals, marketing materials, and technical support.  Alternatively, to the extent a third party performed any step, Defendant has conditioned the third party's use of the functionality of the accused instrumentalities described herein on the performance of that step. On information and belief, a third party could not use the accused functionality without performance of the steps recited in the asserted claims. By facilitating the use of the system or method, Defendant has also controlled the manner and/or timing of the functionality.  In other

18

words, for a third party to utilize the accused functionality involving the Accused Device, the steps of the asserted claims must be performed in the infringing manner. Otherwise, the accused functionality (and the corresponding benefit) would not be available to third parties.

64. In addition, or in the alternative, on information and belief, PCTEL has contributorily infringed and continues to contributorily infringe one or more claims of the '096 Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell components or materials that are especially made or adapted for infringing use and that are not staple articles of commerce suitable for substantial non-infringing use, with knowledge of the '096 Patent and the components' intended use.

65. Upon information and belief, PCTEL's infringement has been and continues to be willful. PCTEL knew or should have known of the '096 Patent, or was willfully blind to it, yet continued its infringing activities with respect to the SeeHawk® *Monitor* system. This conduct warrants enhanced damages under 35 U.S.C. § 284.

66. Upon information and belief, Defendant derives revenue, directly and indirectly, from the activities relating to the Accused Device and to infringement of the '096 Patent, including in this District and elsewhere in the United States.

67. Defendant received actual notice of the '096 Patent at least as early as the March 30, 2018 meeting with Locus, but in no event later than the date it was served with this Complaint. Despite its knowledge of the patent, Defendant has continued to make, use, sell, offer to sell, and import the Accused Products, and to instruct its customers to use those products in a manner that directly infringes the '096 Patent. On information and belief, Defendant's infringement is therefore deliberate, knowing, and willful.

19

68.     Locus has suffered and will continue to suffer damages as a result of PCTEL's infringement and is entitled to damages adequate to compensate for the infringement, together with pre- and post-judgment interest and costs, and to a preliminary and permanent injunction enjoining further infringement, or, in the alternative, an ongoing royalty, and to attorneys' fees under 35 U.S.C. § 285 in this exceptional case.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b) and D. Del. LR 38.1, Plaintiff hereby demands a trial by jury on all issues so triable of right by jury.

## PRAYER FOR RELIEF

Locus respectfully requests that the Court enter judgment in its favor and against Defendant, and that the Court grant Locus the following relief:

1.     Adjudge and declare that Defendant has directly infringed, actively induced infringement of, and/or contributorily infringed the '096 Patent, in violation of 35 U.S.C. § 271;

2.     Adjudge and declare that Defendant's infringement was willful, and that Defendant's continued infringement is willful;

3.     Preliminarily and permanently enjoin Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the '096 Patent;

4.     Award Locus its actual damages adequate to compensate Locus for Defendant's infringement of the '096 Patent, including for any infringement acts not presented at trial and including pre- and post-judgment interest thereon;

20

5.      Order an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales, including pre- and post-judgment interest thereon;

6.      Award Locus its actual damages going back six years from the date of the Complaint due to Defendant's infringement and the fact that the asserted method claims do not require marking and/or there is nothing to mark, including pre- and post-judgment interest thereon;

7.      Adjudge and declare that the Defendant's infringement is willful and awarding enhanced damages in an amount up to treble the amount of compensatory damages as justified under 35 U.S.C. § 284 and/or Rule 54(d) of the Federal Rules of Civil Procedure;

8.      Declare this case exceptional within the meaning of 35 U.S.C. § 285, and award Locus its reasonable attorney fees, pursuant to 35 U.S.C. § 285 and all other applicable statutes and rules in common law as may apply, including pre- and post-judgment interest thereon;

9.      Award Locus pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs, pursuant to 35 U.S.C. § 284;

10.     Order an accounting of damages for acts of infringement; and

11.     Award such other and further relief as this Court deems just and proper.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

21

Date: April 27, 2026

OF COUNSEL:

Victor C. Johnson (pro hac vice forthcoming)
Forrest Gothia (pro hac vice forthcoming)
**DENTONS US LLP**
100 Crescent Court, Suite 900
Dallas, Texas 75201
(214) 259-0900
victor.johnson@dentons.com
forrest.gothia@dentons.com


Stephen Yang (pro hac vice forthcoming)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020
stephen.yang@dentons.com
(212) 398-4890

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP


Anne Shea Gaza (No. 4093)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
dmackrides@ycst.com


*ATTORNEYS FOR LOCUS LOCATION*
*SYSTEMS, LLC*

22